[Cite as *Randlett v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-4576.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| LARRY A.  RANDLETT | Case No. 2023-00459JD |
| Plaintiff | Judge David E. Cain |
| v. | Magistrate Adam Z. Morris |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | <u>DECISION</u> |
| Defendant | |

{¶1} On June 3, 2024, Defendant filed its Motion for Summary Judgment.  On July 10, 2024, after two granted extensions of time by the Court, Plaintiff timely filed his Response in Opposition.  However, Plaintiff's Response also advanced a motion, pursuant to Civ.R. 56(F), "that further discovery be allowed, specifically by way of a deposition of affiant Greer."  (Plaintiff's Response, p. 1).  On July 17, 2024, Defendant filed its combined Reply in Support of its Motion for Summary Judgment and Response in Opposition to Plaintiff's Civ.R. 56(F) Motion.  Plaintiff did not file a Reply in Support of his Civ.R. 56(F) Motion.

{¶2} Initially, the Court shall address Plaintiff's Civ.R. 56(F) Motion requesting further discovery.  Civ.R. 56(F) concerns briefing a motion for summary judgment and states that "[s]hould it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

{¶3} Upon review, Plaintiff did not file a valid affidavit containing sufficient reasons for a continuance as required by Civ.R. 56(F).  Although Plaintiff filed an affidavit of his attorney with his Civ.R. 56(F) Motion, it was not signed or notarized.  Plaintiff did file a signed and notarized copy of his counsel's affidavit on August 12, 2024, without leave of

court, which was outside of the proper filing period and, as such, the Court shall not consider the affidavit. *See* Civ.R. 56(C) ("Responsive arguments, together with all affidavits and other materials in opposition, and a movant's reply arguments may be served as provided by Civ.R. 6(C)."); Civ.R. 6(C); L.C.C.R. 4. Accordingly, Plaintiff's Civ.R. 56(F) Motion is DENIED.

{¶4} Therefore, before the Court is Defendant's Motion for Summary Judgment for a non-oral hearing pursuant to Civ.R. 56 and L.C.C.R. 4(D). For the following reasons, Defendant's Motion for Summary Judgment is GRANTED.

**Standard of Review**

{¶5} Motions for summary judgment are reviewed under the standard set forth in Civ.R. 56(C):

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which

demonstrate the absence of a genuine issue of material fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St. 3d 280, 292 (1996). To meet this initial burden, the moving party must be able to point to evidentiary materials of the type listed in Civ.R. 56(C). *Id*. at 292-293.

{¶6} If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden outlined in Civ.R. 56(E):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

**Facts**

{¶7} Defendant submitted the Affidavit from its employee, Administrative Officer 3/Bureau Chief of Records of the Sentence Computation and Bureau of Records Management Dana Greer, with its Motion for Summary Judgment. Upon review, Plaintiff submitted miscellaneous documents with his Response, which are unable to be considered by the Court as they were not properly sworn, certified, or authenticated by a timely affidavit.[1] *See Gabriel v. Ohio State Univ. Med. Ctr.*, 2015-Ohio-2661, ¶ 23 (10th Dist.), citing *Riley v. Brimfield*, 2010-Ohio-5181, ¶ 66 (11th Dist.) ("Pursuant to Civ.R. 56(C), 'documents submitted in opposition to a motion for summary judgment must be sworn, certified or authenticated by affidavit to be considered by the trial court in

---

[1] Plaintiff filed six exhibits with his Response, but, upon review, none of the exhibits can be properly considered by the Court as they were not properly authenticated for purposes of Civ.R. 56. Plaintiff's proposed exhibits include: Exhibit 1 (unsigned and unnotarized affidavit from Plaintiff's counsel, as discussed an untimely signed and notarized copy was later filed); Exhibit 1 (second exhibit 1; apparent unrelated May 8, 2017 order from the United States District Court, Northern District of Ohio, Western Division); Exhibit 2 (purports to be an unsigned and unnotarized affidavit with three exhibits from Plaintiff); Exhibits 3-6 (purports to be documents provided to Plaintiff by Defendant in Discovery, but are not interrogatory responses). To the extent that Exhibits 3-6 may be proper because the documents appear as exhibits to Defendant's employee Dana Greer's proper Affidavit, the Court cannot consider such documents because the bates stamps are different between exhibits and, as such, the pages used by Plaintiff as exhibits to his Response have not been properly authenticated.

determining a genuine issue or material fact exists for trial.'"). Accordingly, the relevant pleadings and evidence submitted, viewed in a light most favorable to Plaintiff, show the following:

{¶8} Plaintiff, a former inmate in the custody and control of Defendant, was incarcerated for sentences related to four criminal convictions in the Franklin County Court of Common Pleas: 01CR-02-0705; 01CR-08-4353; 02CR-03-1721; 02CR-03-1738. (Complaint, ¶ 1, 5, 7; Dana Greer Affidavit, ¶ 7).

{¶9} On February 10, 2003, Plaintiff was convicted in case number 01CR-02-0705 and, on March 31, 2003, was sentenced to a total aggregate prison term of 6 years, which in December 2003 was modified to 3 years by the Tenth District Court of Appeals. (Compl., ¶ 7; Greer Aff., ¶ 9, 13, Exhibit A). Plaintiff was sentenced under Senate Bill 2 sentencing guidelines for all 3 years. (Greer Aff., ¶ 13).

{¶10} On February 10, 2003, Plaintiff was convicted in case number 01CR-08-4353 and, on March 31, 2003, was sentenced to a total aggregate prison term of 6 years. (Compl., ¶ 7; Greer Aff., ¶ 10, Ex. B). Plaintiff was sentenced under Senate Bill 2 sentencing guidelines for all 6 years. (Greer Aff., ¶ 13).

{¶11} On February 10, 2003, Plaintiff was convicted in case number 02CR-03-1721 and, on March 31, 2003, was sentenced to a total aggregate prison term of 9 years, which on August 2, 2007, was modified to 8 years by signed letter from the Franklin County Common Pleas sentencing Judge. (Compl., ¶ 7; Greer Aff., ¶ 11, Ex. C). Plaintiff was sentenced under Senate Bill 2 sentencing guidelines for 5 years and House Bill 261 sentencing guidelines for 3 years. (Greer Aff., ¶ 13).

{¶12} On March 31, 2003, Plaintiff was convicted in case number 02CR-03-1738 and was sentenced to a total aggregate prison term of 4.5 years, which in December 2003 was modified to 3 years by the Tenth District Court of Appeals. (Compl., ¶ 5-6; Greer Aff., ¶ 12, Ex. D). Plaintiff was sentenced under House Bill 261 sentencing guidelines for all 3 years. (Greer Aff., ¶ 13).

{¶13} On April 16, 2003, Plaintiff was admitted to Defendant's custody and control on the four criminal convictions and assigned Offender Identification Number A446-914. (Greer Aff., ¶ 7). Plaintiff's "total sentence was six years on House Bill 261, which was to be served consecutively to his sentence of 14 years on Senate Bill 2." (Greer Aff., ¶ 14).

Plaintiff's House Bill 261 sentence was served before his Senate Bill 2 sentence. (Greer Aff., ¶ 15). Plaintiff earned and was awarded credit for his sentences during his incarceration. (Compl., ¶ 9-12; Greer Aff., ¶ 16-17). Plaintiff was released from Defendant's custody and control on November 30, 2020. (Compl., ¶ 12).

**Law and Analysis**

{¶14} Plaintiff asserts false imprisonment and gross negligence based on the same set of operative facts that Defendant maintained Plaintiff's incarceration for approximately a year longer than required by law. (Compl., ¶ 14-17, 18-23). Plaintiff alleges that because of Defendant's failure to properly calculate his time, he "suffered a violation of his state and federal constitutional rights resulting in his loss of freedom, loss of potential income, emotional pain and suffering, humiliation and indignance causing emotional stress." (Compl., ¶ 17, 23).

{¶15} Defendant asserts that it is entitled to summary judgment because "at all relevant times, [Plaintiff] was incarcerated by [Defendant] in accordance with facially valid sentencing orders from a county court of common pleas and because the application of his 'earned credit' was properly applied to his sentences according to Ohio law, as well as [Defendant's] sentence computation manual and policies." (Defendant's Motion, p. 1).

{¶16} "False imprisonment occurs when a person confines another intentionally 'without lawful privilege and against his consent within a limited area for any appreciable time, however short.'" *Bennett v. Ohio Dept. of Rehab. & Corr.,* 60 Ohio St.3d. 107, 109 (1991), quoting *Feliciano v. Kreiger,* 50 Ohio St.2d 69, 71 (1977). Pursuant to R.C. 2743.02(A)(1), "'the state may be held liable for the false imprisonment of its prisoners.'" *Abercrombie v. Ohio Dept. of Rehab. & Corr.*, 2017-Ohio-5606, ¶ 9 (10th Dist.), quoting *Bennett* at paragraph two of the syllabus.

{¶17} However, the state may not be held liable on a claim for false imprisonment "'when the imprisonment is in accordance with an order of a court, unless it appears that the order is void on its face.'" *Jackson v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-1642, ¶ 29 (10th Dist.), quoting *Fisk v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-5889, ¶ 12 (10th Dist.), citing *McKinney v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-2323, ¶ 9 (10th Dist.); *Brandon v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-418, ¶ 17 (10th Dist.) (The

state may not be held liable for false imprisonment "when the imprisonment is in accordance with an order of a court, unless it appears that the order is void on its face."); *Williams v. Ohio Dept. of Rehab. & Corr.*, 2009-Ohio-3958, ¶ 12 (10th Dist.) ("However, an action for false imprisonment cannot be maintained when the imprisonment is in accordance with the judgment or order of a court, unless it appears such judgment or order is void on its face.").

{¶18} "'Thus, the state is immune from a common law claim of false imprisonment when the plaintiff was incarcerated pursuant to a facially-valid judgment or order, even if the facially-valid judgment or order is later determined to be void.'" *Jackson* at ¶ 29, quoting *McKinney* at ¶ 9, citing *Bradley v. Ohio Dept. of Rehab. & Corr.*, 2007-Ohio-7150, ¶ 11 (10th Dist.) ("[T]he state is immune from liability even though the facially valid judgment or order was later determined to be void."); *Roberson v. Dept. of Rehab. & Corr.*, 2003-Ohio-6473, ¶ 9 (10th Dist.); *Likes v. Ohio Dept. of Rehab. & Corr.*, 2006-Ohio-231, ¶ 10 (10th Dist.).

{¶19} Further, an order is not facially invalid where the determination of invalidity requires consideration of extrinsic information or of case law. *Beachum v. Ohio Dept. of Rehab. & Corr.*, 2012-Ohio-673, ¶ 7 (10th Dist.) ("Facial invalidity does not require the consideration of extrinsic information or the application of case law."). Where the invalidity of a judgment is only apparent upon the application of case law, the judgment entry is not facially invalid. *McKinney,* at ¶ 12.

{¶20} "To prevail on a claim for false imprisonment against the state, a person must be able to demonstrate: '(1) expiration of the lawful term of confinement, (2) intentional confinement after the expiration, and (3) knowledge that the privilege initially justifying the confinement no longer exists.'" *Brandon,* at ¶ 17, quoting *Wash v. Ohio Adult Parole Auth.*, 2020-Ohio-3385, ¶ 22 (10th Dist.); *see also Jackson,* at ¶ 29.

{¶21} Upon review, the Court finds that Plaintiff was incarcerated, at all times relevant, by facially valid sentencing orders from the Franklin County Court of Common Pleas and modifications by the Tenth District Court of Appeals and Franklin County Court of Common Pleas' sentencing judge.

{¶22} However, false imprisonment cases may also be brought for failure to properly calculate earned time credit for a reduction of time served. *See, e.g., State v.*

*Fisher*, 2016-Ohio-8501 (10th Dist.).    Upon review, Plaintiff's claims are for failure to properly calculate earned time credit.    Plaintiff asserts that "defendant, through its division of Bureau of Sentence Computation (BSC), incorrectly calculated plaintiff's earned days of credit which caused him to remain in [Defendant's] custody for over 365 days. The basis for plaintiff's contention is that BSC failed to credit him under several different programs that he participated in as well as earned time credit that was available under the 'old law' pre-S.B.2." (Plaintiff's Response, p. 3).    As such, Plaintiff states that "[t]his issue is distinctly different from defendant's assertion that plaintiff could only bring a false imprisonment claim based on a judgment what on its face was void."    (Plaintiff's Response, p. 3).    Moreover, Plaintiff further clarifies that "[his] argument that defendant did not properly apply all the credit provisions available to him, [he] is specifically addressing the last case for which he served time, 02 CR 03-1738." (Plaintiff's Response, p. 6).

{¶23} "[O]DRC has an independent duty to follow self-executing provisions of the Ohio Revised Code pertaining to multiple sentences and to calculate a prisoner's sentence expiration date accordingly." *Fisher* at ¶ 16, citing *Stroud v. Dept. of Rehab. & Corr.*, 2004-Ohio-580, ¶ 39 (10th Dist.).    The Ohio Administrative Code (OAC) "govern[s] how the Ohio Department of Rehabilitation and Correction (ODRC) calculates sentences and determines reductions in sentences. *State v. Arnold*, 2009-Ohio-3636, ¶ 55 (2d Dist.). Such OAC provisions are "ODRC's own administrative regulations, not those of the trial court." *Id.*, citing *Stroud* at ¶ 36.

{¶24} Adm.Code. 5120-2-03.2 deals with the "[d]etermination of multiple sentences."    "'Senate Bill 2 sentence' means a prison term imposed for offenses committed on or after July 1, 1996 but before September 30, 2011." Adm.Code. 5120-2-03.2(A)(1).    "'Pre-Senate Bill 2 sentence' means prison terms imposed for offenses committed before July 1, 1996.  'Pre-Senate bill 2 sentence' includes both definite and indefinite sentences." Adm.Code. 5120-2-03.2(A)(2).  A sentence pursuant to House Bill 261 involves the "old law" Pre-Senate Bill 2.  *See State v. Johnson*, 2020-Ohio-3058, ¶ 4 (2d Dist.).    Adm.Code. 5120-2-03.2 "applies when an offender is serving a term of imprisonment for more than one felony and at least one of the felonies was committed prior to July 1, 1996, and at least one of the felonies was committed on or after July 1,

1996." Adm.Code. 5120-2-03.2(B). As such, "[t]he determination of the length and expiration of the term of imprisonment for each felony must be determined in accordance with the set of laws in effect at the time the felony was committed." Adm.Code. 5120-2-03.2(B). "In such situations, at least two, and potentially four, different sets of laws apply and the terms of imprisonment for each felony may be subject to different amounts of reduction for jail time credit." Adm.Code. 5120-2-03.2(B). Adm.Code. 5120-2-03.2 further sets out application of earned time credit as follows:

(C) When a prison term for a crime committed on or after July 1, 1996, is imposed to run concurrently to a crime committed before July 1, 1996, the expiration date of each term of imprisonment must be determined independently in accordance with the appropriate set of laws. The expected expiration of the term for the crime committed on or after July 1, 1996 in most cases will be determined by diminishing the term by jail credit. The expected expiration of the crime committed before July 1, 1996 in most cases will be determined by diminishing the sentence by good time and jail credit. The sentence with the latest expiration date becomes the controlling sentence regarding the offender's expected release.

(D) During the period of imprisonment, the offender may be able to reduce each term by the appropriate amount of earned credit. In addition, if the sentence includes a pre-Senate Bill 2 sentence and a Senate Bill 2 sentence, a House Bill 86 sentence, or a Senate Bill 201 sentence, or any combination of those three, the pre-Senate Bill 2 sentence is subject to denial of good time and any Senate Bill 2, House Bill 86 and Senate Bill 201 sentence is each subject to loss of earned credit as provided in rule 5120-2-06 of the Administrative Code. Due to such differences, the controlling term can change during the period of imprisonment. Therefore, the expiration date of each term of imprisonment must be determined independently each time there is any reduction or increase in any term. The offender cannot be released until every pre-Senate Bill 2 definite sentence and every Senate Bill 2, House Bill 86 and Senate Bill 201 sentence has

expired; that is, until the definite term of imprisonment with the latest expiration date has expired.

(E) When a Senate Bill 2, House Bill 86, or Senate Bill 201 sentence is imposed to run consecutively to a pre-Senate Bill 2 definite sentence, the pre-Senate Bill 2 definite sentence is to be served first, then the Senate Bill 2 sentence, then any House Bill 86 sentence, then any Senate Bill 201 sentence.  When a Senate Bill 2 sentence, a House Bill 86 sentence and a Senate Bill 201 sentence are imposed to run consecutively, the Senate Bill 2 sentence is to be served first, then the House Bill 86 sentence, then the Senate Bill 201 sentence.  When a Senate Bill 2 sentence, a House Bill 86 sentence, or a Senate Bill 201 sentence is imposed to run consecutively to a pre-Senate Bill 2 indefinite sentence, the Senate Bill 2 definite sentence is to be served first, then any House Bill 86 sentence, then any Senate Bill 201 sentence, and, lastly, the pre-Senate Bill 2 indefinite sentence is to be served.

(F) While a pre-Senate Bill 2 sentence is being served, the offender may be able to reduce the sentence by up to seven days per month of earned credit, and is subject to a potential denial of good time.  While a Senate Bill 2 sentence is being served, the offender may be able to reduce the prison term by one day per month of earned credit and is subject to loss of earned credit as provided in rule 5120-2-06 of the Administrative Code. While a House Bill 86 sentence or Senate Bill 201 sentence is being served, the offender may be able to reduce the prison term by one day per month or five days per month as provided in rule 5120-2-06 of the Administrative Code and is subject to loss of earned credit as provided in that rule.  If an offender is serving more than one House Bill 86 or Senate Bill 201 sentence imposed to run consecutively to one another, for purposes of determining whether an offender is eligible for earned credit and how much, sentences for which the offender may earn zero days of credit per month, if any, is to be served first, then sentences for which the offender may earn one day of

credit per month, if any, and, lastly, sentences for which the offender may earn five days of credit per month, if any, are to be served.

Adm.Code. 5120-2-03.2(C)-(F).

{¶25} Defendant asserts that it "correctly calculated [Plaintiff's] sentences for those four criminal cases, including its calculation of his 'earned credit', using Ohio law, its Sentence Computation Manual, and its policies." (Defendant's Motion, p. 9). Defendant submitted Civ.R. 56(C) evidence in the form of an affidavit from its employee, Administrative Officer 3/Bureau Chief of Records of the Sentence Computation and Bureau of Records Management Dana Greer.

{¶26} Greer is employed by Defendant in the Bureau of Sentence Computation (BOSC). (Greer Aff., ¶ 2). "BOSC is responsible for processing sentencing documents and computing release dates for incarcerated persons sentenced to the custody of the ODRC." (Greer Aff., ¶ 3). BOSC's sentencing calculations are based on "certified entries received from a court of law, the applicable sentencing law the incarcerated person was sentenced under, and the application of earned credit for those incarcerated persons eligible for sentence reduction under applicable laws." (Greer Aff., ¶ 3, Ex. H). Greer, as Chief of BOSC, provides "oversight and management of the following areas: executive responsibility, at the direction of the Director, to ensure offenders are released upon expiration of sentences; ensuring accurate calculation of sentencing and performing sentence calculations in most complex situations; and maintaining accurate certification of all releases on incarcerated people." (Greer Aff., ¶ 4).

{¶27} "All information pertaining to an incarcerated person's calculation of their sentence documenting that the time is accurately computed and recorded in conformance with applicable statutes and regulations is maintained in the BOSC legal file." (Greer Aff., ¶ 6). "BOSC is responsible for maintaining, updating, and reviewing the legal file to ensure it is current and accurate." (Greer Aff., ¶ 6). Accordingly, Greer is "trained and familiar with [Defendant's] policies, procedures, and practices related to sentence computation, as well as the applicable state law, rules, and regulations." (Greer Aff., ¶ 5).

{¶28} Greer avers that she "personally reviewed the BOSC Legal File for [Plaintiff]. Exhibits A, B, C, D, E, F, G, H, and I are true and accurate copies of the certified sentencing calculation and court records in the BOSC Legal File for [Plaintiff], which are

maintained in the course of regularly conducted business activities at ODRC." (Greer Aff., ¶ 8). Plaintiff entered Defendant's control and custody on four separate criminal convictions from the Franklin County Court of Common Pleas, 01CR-02-0705; 01CR-08-4353; 02CR-03-1721; 02CR-03-1738, which were all sentenced at the same time. (Greer Aff., ¶ 9-12, Exs. A-D). Plaintiff's sentences in 01CR-02-0705 and 02CR-03-1738 were later modified by the Tenth District Court of Appeals and Plaintiff's sentence in 02CR-03-1721 was later modified by the Franklin County Court of Common Pleas' sentencing judge. (Greer Aff., ¶ 9,11, 12). Plaintiff's total sentence was "six years on House Bill 261, which was to be served consecutively to his sentence of 14 years on Senate Bill 2" with his House Bill 261 sentence served before his Senate Bill 2 sentence."[2] (Greer Aff., ¶ 14-15). Moreover, "[Defendant] awarded [Plaintiff] earned credit for productive program participation and/or completion pursuant to [Defendant's] policy." (Greer Aff., ¶ 17). Accordingly, Defendant's sentencing computation for Plaintiff's four criminal sentence is summarized as follows:

- [Plaintiff] was ordered to serve six years in the State's custody on House Bill 261, which was automatically diminished to four years, two months, and 13 days. He was awarded 72 days of jail-time credit on that sentence, giving him an original House Bill 261 estimate expiration date of April 14, 2007;

- While serving the House Bill 261 portion of his sentence, [Plaintiff] received 72 days of House Bill 261 earned credit making his House Bill 261 expiration date February 1, 2007. This is the maximum

---

[2] "By its judgment entry imposing sentence, the Franklin County Court of Common Pleas sentenced [Plaintiff] as follows:

    A.  Franklin County Case Number 01CR-02-0705 serving three years on Senate Bill 2

    B.  Franklin County Case Number 01CR-08-4353 serving six years on Senate Bill 2

    C.  Franklin County Case Number 02CR-03-1721 serving five years on Senate Bill 2 plus three years on House Bill 261

    D.  Franklin County Case Number 02CR-03-1738 serving three years on House Bill 261

(Greer Aff., ¶ 13).

amount earned credit that Mr. Randlett could receive because he reached his 0.667 date under House Bill 261.

- [Plaintiff's] 14-year Senate Bill 2 sentence in the State's custody started on February 2, 2007, giving him an original estimated Senate Bill 2 release date of January 28, 2021; and

- While serving the Senate Bill 2 portion of his sentence, [Plaintiff] earned 63 days of Senate Bill 2 earned credit giving him a new estimated release date of November 26, 2020.

(Greer Aff., ¶ 16, Ex. H). "[Plaintiff] was released from [Defendant's] custody, under post-release control sanction, on November 26, 2020." (Greer Aff., ¶ 18).

{¶29} Upon review, the Court finds that the Civ.R. 56(C) evidence submitted by Defendant establishes that Defendant cannot be liable for falsely imprisoning Plaintiff because he was incarcerated by Defendant pursuant to facially valid sentencing entries and Defendant properly applied Plaintiff's earned credit to his sentences according to using Ohio law, its Sentence Computation Manual, and its policies. Accordingly, Defendant has met its initial burden as the moving party seeking summary judgment pursuant to Civ.R. 56(C).

{¶30} Plaintiff states his claims are "based on defendant's failure to award him credit for his participation in programs or other mechanisms that provided him a way to reduce his total amount of time he had to serve." (Plaintiff's Response, p. 3). Plaintiff presents multiple arguments regarding Defendant's improper application of earned credit, but the Court does not find Plaintiff's arguments well-taken.

{¶31} As with any factual issue on summary judgment, "[i]f the opposing parties present evidence on both sides of the issue, then summary judgment is inappropriate, and a finder of fact must decide the issue." *Wright v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-4359, ¶ 11 (10th Dist.). "When a motion for summary judgment is made and supported as provided in Civ.R. 56, the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine triable issue." *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996). Upon review, the Court finds that while Plaintiff summarizes multiple arguments, as previously discussed, Plaintiff

did not submit any admissible Civ.R. 56 evidence to meet his reciprocal burden that Defendant improperly applied Plaintiff's earned credit to his sentences according to using Ohio law, its Sentence Computation Manual, and its policies.

{¶32} Plaintiff argues that "applying [] OAC sections to the documents produced by defendant, both in discovery and in support of its summary judgment motion, plaintiff contends that there was a failure on defendant's part to 'stack' or combine the credit provisions available to him under the 'old law' or HB261." (Plaintiff's Response, p. 5-6). To the extent Plaintiff makes this argument, he draws inconsistencies with documents purported to be produced in discovery and documents used by Greer for purposes of her affidavit. (Plaintiff's Response, p. 6-8). Plaintiff specifically notes inconsistencies with the documents he filed as Exhibit 6 to his Response. However, Plaintiff's reliance on inconsistencies and handwritten notes is not well-taken as his Exhibit 6 has not been properly authenticated and, as such, the Court cannot consider it. Moreover, Plaintiff provides the Court no evidence to otherwise determine the amount of earned credit he had allegedly earned that was improperly calculated and/or applied. Plaintiff's reliance on his own calculations by way of affidavit is not well-taken because his purported affidavit, Exhibit 2 to his Response, is wholly deficient as it is neither signed nor notarized. Finally, Plaintiff's argument that Exhibit H to Greer's Affidavit, ODRC Sentence Calculation Manual 2021, does not contain the proper law to determine earned credit calculations as used by Defendant is conclusory without further explanation and evidence as to its inapplicability because, upon review, it includes sections on House Bill 261 and Senate Bill 2. As such, Plaintiff's Response does not demonstrate the existence of a genuine issue of material fact meeting the reciprocal burden pursuant to Civ.R. 56(E) regarding Defendant's calculation and application of Plaintiff's earned credit to his sentences according to using Ohio law, its Sentence Computation Manual, and its policies. Accordingly, Defendant is entitled to judgment as a matter of law.

**Conclusion**

{¶33} Defendant has met its initial burden, pursuant to Civ.R. 56(C), by showing that there are no genuine issues of material fact regarding facially valid sentencing entries and Defendant's calculation and application of Plaintiff's earned credit to his sentences

according to using Ohio law, its Sentence Computation Manual, and its policies. However, Plaintiff has not met his reciprocal burden, pursuant to Civ.R. 56(E), setting forth specific facts showing that there is a genuine issue for trial. Even construing the evidence in a light most favorable to Plaintiff, he has failed to demonstrate the existence of a genuine issue of material fact related to Defendant's calculation and application of Plaintiff's earned credit to his sentences according to using Ohio law, its Sentence Computation Manual, and its policies.

{¶34} For these reasons, Defendant's Motion for Summary Judgment is GRANTED.

DAVID E. CAIN
Judge

[Cite as *Randlett v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-4576.]

| | |
|---|---|
| LARRY A. RANDLETT | Case No. 2023-00459JD |
| Plaintiff | Judge David E. Cain<br>Magistrate Adam Z. Morris |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

## IN THE COURT OF CLAIMS OF OHIO

{¶35} On July 18, 2024, a non-oral hearing was conducted in this case upon Defendant's Motion for Summary Judgment. For the reasons set forth in the Decision filed concurrently herewith, Defendant's Motion for Summary Judgment is GRANTED. Judgment is rendered in favor of Defendant. All previously scheduled events are VACATED. Court costs are assessed against Plaintiff. The Clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

DAVID E. CAIN
Judge

Filed August 28, 2024
Sent to S.C. Reporter 9/19/24